# Court of Appeals
## Tenth Appellate District of Texas

10-24-00193-CR

The State of Texas,
Appellant

v.

Pacen Cage Mills,
Appellee

On appeal from the
278th District Court of Madison County, Texas
Judge Hal R. Ridley, presiding
Trial Court Cause No. 23-14117

JUSTICE HARRIS delivered the opinion of the Court.

## MEMORANDUM OPINION

Pacen Cage Mills, who is the appellee in this appeal, was charged with sexual assault of a child. His attorney filed a pretrial motion to suppress statements made by Mills to a Special Ranger with the Texas Southwestern Cattle Raiser's Association, which, after a hearing, the trial court granted. We reverse the trial court's decision to grant Mills' motion to suppress and remand this case to the trial court for further proceedings.

**BACKGROUND**

In June of 2022, Steve Jeter was employed as a Special Ranger, specifically, a Cattle Ranger, with the Texas Southwestern Cattle Raiser's Association. He was primarily responsible for conducting agriculture-related investigations. He was a certified police officer and had been for over 25 years.

Jeter was contacted on June 19, 2022 by a local attorney regarding an incident with a minor victim, identified with the pseudonym, Sam. The incident was of a "sensitive" matter. Upon meeting and speaking with Sam's father the next day, he learned that the father believed someone or some individuals were entering his property and putting his family and his livestock in "harm's way." Specifically, the father believed an individual named Tye Coleman was having a sexual relationship with Sam, who was 16 years old at the time. Coleman was 28 years old. Jeter then spoke with Sam and learned that he needed to investigate Mills as well. Sam asserted that Mills had had oral sex with Sam. Mills was in his early 20's.

Jeter met with Mills on June 20, 2022 at Mills' home. Jeter was dressed in jeans, a shirt, and a hat. He wore his badge on his shirt and had his duty weapon. Mills invited Jeter inside his house, and Mills sat on one couch while Jeter sat on another couch as he interviewed Mills.[1] Jeter let Mills know why

---

[1] Mills acknowledged in his recorded statement that he was familiar with Jeter through positive information by a friend.

Jeter was there—to talk about Sam's accusations. At first, Mills denied the accusations, but then, after a few more minutes of talking, Mills confirmed what Sam had claimed. Mills was not in custody or under arrest and thus, was not read his *Miranda*[2] rights. Jeter did not force Mills to speak with him, and Jeter believed Mills voluntarily spoke with him.

Jeter interviewed Coleman the next day and took his cell phone. After the interviews were completed, Jeter felt like Sam and his family were not in harm's way anymore. He prepared a report and turned everything over to the Madison County District Attorney's office on June 22, 2022. Jeter was not involved in any arrests that were made; those were accomplished by the Sheriff's Office.

**MOTION TO SUPPRESS**

Mills was indicted in March of 2023 for the offense of sexual assault of a child.[3] He filed a motion to suppress his recorded statement with Jeter, pursuant to article 28.23 of the Texas Code of Criminal Procedure, alleging that Jeter lacked the authority to investigate an allegation of sexual assault and that his actions equated to committing the offenses of impersonating a

---

[2] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, L. Ed. 2d 694 (1966).

[3] Coleman was charged with possession of child pornography and possession of lewd material. *State v. Coleman*, Nos. 12-24-00104-CR, 12-24-00105-CR, 2024 Tex. App. LEXIS 7788, *5 (Tex. App.—Tyler Oct. 31, 2024), *rev'd*, 2026 Tex. Crim. App. LEXIS 99 (Tex. Crim. App. 2026) (publish).

public servant, false identification as a peace officer, and official oppression.

The trial court held a hearing and granted the motion to suppress. The only ground for suppression discussed was whether Jeter had authority to investigate the allegations against Mills. The trial court determined Jeter did not and signed a letter ruling with findings.[4] These include the specific finding that "the statement [Mills'] was voluntarily made without coercion or promise of benefit." The State appealed, raising three issues: the trial court erred in granting the motion to suppress because (1) Mills does not have standing to challenge Jeter's authority to investigate him; (2) even if Mills had standing as a third-party beneficiary, the evidence was not obtained in violation of Mills' rights; and (3) Jeter acted within his authority to enforce laws designed to protect life and property.

In reviewing a trial court's ruling on a motion to suppress, we apply a

---

[4] We note that a motion to suppress Coleman's statement to Jeter and physical evidence taken from him was filed, heard, and determined by the same trial court well before Mills' motion to suppress was filed, heard, and determined. Immediately after Mills' suppression hearing, the trial court announced that the findings made in Coleman's case would remain the same, "verbatim," for this case except for the addition that Jeter testified that he went to Mills' house to investigate a sex crime; "but everything else, from his conduct, the voluntariness of the confession, all of that stays the same." Thus, we can conclude that the 30 findings in this case, save and except the first finding that states the date of the hearing and the sentence added to finding 15, that "[h]is testimony reveals he arrived at the home to conduct a sexual assault investigation[,]" are the same as the findings made in response to Coleman's motion to suppress. We can confirm through the Court of Criminal Appeals' opinion in *State v. Coleman*, Nos. PD-0093-25, PD-0094-25, 2026 Tex. Crim. App. LEXIS 99,*9-12 (Tex. Crim. App. Jan. 29, 2026) (publish), that at least 19 findings from the *Coleman* case, save and except the added sentence to finding 15, are identical to the findings in this case. It is also worth noting that briefs by the parties and any exhibits, other than Mills' recorded statement, which the trial court mentions in and relies upon for many of its findings, were not introduced into evidence or presented to the trial court in this case and are not, therefore, a part of the record in this case. The only exhibit introduced was Mills' recorded statement which was not played during the hearing.

bifurcated standard of review that gives almost total deference to the trial court's determination of historical facts that the record supports and considers *de novo* the application of the law to the facts. *State v. Pettit*, 713 S.W.3d 834, 839 (Tex. Crim. App. 2025). We defer to the trial court's findings unless they are unsupported by the record and view the evidence in the light most favorable to the trial court's ruling. *Id*. The trial court's ruling on a motion to suppress will be reversed only if it is arbitrary, unreasonable, or outside the zone of reasonable disagreement. *Id*.

**STANDING**

The State contends in its first issue that Mills has no standing to challenge Jeter's authority to investigate the claims against him.

We find the Court of Criminal Appeals' opinion in *Coleman* dispositive of this issue. *See State v. Coleman*, Nos. PD-0093-25, PD-0094-25, 2026 Tex. Crim. App. LEXIS 99,\*9-12 (Tex. Crim. App. Jan. 29, 2026) (publish). In *Coleman,* the trial court had granted Coleman's motion to suppress for the same reasons as in this case. State had also appealed to the court of appeals raising the same three issues as here. The court of appeals affirmed the trial court's ruling. *See State v. Coleman*, Nos. 12-24-00104-CR, 12-24-00105-CR, 2024 Tex. App. LEXIS 7788 (Tex. App.—Tyler Oct. 31, 2024), rev'd, 2026 Tex. Crim. App. LEXIS 99 (Tex. Crim. App. 2026) (publish).

In reversing the court of appeals, the Court of Criminal Appeals determined that

> [a]lthough Article 38.23 allows the violation of a statute to be a basis for suppression, under current precedent construing that statute, a defendant seeking to use Article 38.23 must still show "standing": that he has "suffered an infringement of a legal right." And under current precedent, such an infringement is not shown by the mere fact that a law-enforcement officer lacked statutory authority to conduct an investigation.

*Coleman*, 2026 Tex. Crim. App. LEXIS at \*17 (citations omitted). The Court noted, however, that if an officer or a private person commits a crime of deception that persuades a defendant to confess, the defendant might have standing to assert that particular law violation. *Id*. at \*17-18. But, as in *Coleman*, the trial court in this case based its suppression ruling solely on the conclusion that Jeter lacked authority to conduct the investigation, and that is not enough to confer standing under article 38.23.

It does not appear that either party in this appeal mentioned the "*Calloway* rule," *see id*. at \*14, for the proposition that the trial court's ruling should be upheld if it was correct under any applicable theory such as the theory alleged by Mills in his motion to suppress that Mills had standing because Jeter committed the offenses of impersonating a public servant, false identification as a peace officer, and official oppression. Regardless, the Court of Criminal Appeals has already determined that Jeter did not commit the

offense of impersonating a public servant, *id*. at \*19-25, and the pertinent facts presented in this case regarding this alleged offense are not substantially different than those presented in *Coleman.* Thus, we adopt the reasoning of the Court of Criminal Appeals in *Coleman* and find Jeter did not, in this case, commit the offense of impersonating a public servant.

Regarding the other two alleged offenses, there is nothing in our record to support a determination that Jeter committed those offenses either.

To commit an offense of false identification as a peace officer, a person must: (1) make, provide to another person, or possess a card, document, badge, insignia, shoulder emblem, or other item, including a vehicle, bearing an insignia of a law enforcement agency that identifies a person as a peace officer or a reserve law enforcement officer; and (2) the person who makes, provides, or possesses the item bearing the insignia knows that the person so identified by the item is not commissioned as a peace officer or reserve law enforcement officer as indicated on the item, or the person intentionally or knowingly misrepresents an object, including a vehicle, as property belonging to a law enforcement agency. *See* TEX. PENAL CODE § 37.12 (a), (d). There is no evidence in the record regarding the type of badge Jeter wore that would make the possession of it an offense or that he misrepresented an object to be property belonging to a law enforcement agency.

To commit the offense of official oppression, a public servant acting under color of his office or employment must: (1) intentionally subject another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful; (2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; or (3) intentionally subjects another to sexual harassment. *See* TEX. PENAL CODE § 39.03 (a). Jeter testified that Mills was not detained or under arrest when Jeter interviewed him, and the trial court found that Mills' statement was voluntarily made, "without coercion or promise of benefit." Further, there was no evidence that Jeter subjected Mills to sexual harassment.

Accordingly, because a lack of authority determination is not sufficient by itself to confer standing in a request for suppression of evidence obtained in violation of article 38.23 of the Code of Criminal Procedure, and because the record does not establish that Jeter committed a crime of deception such as impersonating a public servant, false identification as a peace officer, or official oppression in obtaining Mills' statement, the trial court abused its discretion in granting Mills' motion to suppress his statement.

**CONCLUSION**

State's first issue is sustained, and we reverse the trial court's letter

ruling and findings dated and signed on June 27, 2024, and remand this case to the trial court for further proceedings. We need not discuss the State's remaining two issues.

LEE HARRIS
Justice

OPINION DELIVERED and FILED: July 9, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Reversed and remanded
Do Not Publish
CR25

